UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| PRO CUSTOM SOLAR LLC d/b/a MOMENTUM SOLAR<br><br>Plaintiff,<br>v.<br><br>BLUE RAVEN SOLAR, LLC<br><br>Defendant. | Case No. _____<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Pro Custom Solar, LLC d/b/a Momentum Solar, ("Plaintiff" or "Momentum") by and through its undersigned attorneys, by way of this Verified Complaint against the Defendant, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this matter before this Court to prevent, enjoin, and remedy the unfair and illicit practices of Defendant Blue Raven Solar, LLC ("Defendant" or "Blue Raven"). Defendant has devised and set in motion a two-pronged scheme: (i) recruit Momentum employees who possess knowledge and information regarding Momentum's confidential training and sales and marketing strategies to Defendant's employ with knowledge of and in blatant contravention of the non-compete, non-solicitation and confidentiality covenants in the employees' employment agreements with Momentum; and (ii) induce those same Momentum employees to divulge the confidential and propriety Momentum information and materials within their knowledge and possession to Defendant.

2. Defendant's efforts to recruit Momentum's employees have been aggressive and pervasive. Since April 2019, Defendant has induced former Momentum employees

1

Donald Castillo, Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes (the "Breaching Employees") to leave their employment with Momentum and take employment with Defendant, in violation of the restrictive covenants contained in each of these employees' individual employment agreements (the "Employment Agreements").

3. Upon information and belief, Defendant and the Breaching Employees have further conspired to lure additional individuals away from their employment with Momentum.

4. Correspondingly, upon information and belief, Defendant has elicited or attempted to elicit Momentum's confidential and proprietary information from the Breaching Employees. The Breaching Employees possess and have intimate knowledge of Momentum's training materials, sales leads, sales scripts, and other marketing materials and strategies that are closely guarded by Momentum. Upon information and belief, the Breaching Employees divulged Momentum's confidential business information to Defendant, thus irreparably harming Momentum.

5. Momentum instituted an action entitled *Pro Custom Solar LLC d/b/a Momentum Solar v. Donald Castillo, Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui, and Karla Mercedes* against the Breaching Employees in New Jersey. Pursuant to a forum selection clause, the action was initially filed in the Superior Court of New Jersey, Chancery Division, Middlesex County. The action was removed to the District of New Jersey and now bears Civil Action Number 2:19-cv-12469-SDW-SCM ("New Jersey Litigation").

6. Momentum now seeks the Court's protection from the Defendant's illicit conduct and in this complaint respectfully requests that the Court enjoin Defendant from continuing its

unlawful campaign of recruiting Momentum's employees or utilizing any of Momentum's confidential, proprietary information and requests damages for Defendant's misconduct.

## THE PARTIES

7. Momentum is a limited liability company with its principal place of business at 3096 Hamilton Blvd, Building B, South Plainfield, NJ 07080, and is engaged in the sale, design and installation of solar-electric systems to residential and commercial property owners in New Jersey, New York, California, Florida, Connecticut and Texas.

8. Defendant is a limited liability company with a principal place of business located at 1220 S. 630 E. Suite #430, American Fork, Utah 84003, and it purports to be in the business of selling, designing and installing solar-electric systems to residential customers and commercial businesses across multiple states, including Utah, Colorado, Idaho, Illinois, Nevada, North Carolina, Oregon, South Carolina, Washington, and Florida.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because actions which form the basis for this lawsuit are occurring within this jurisdiction.

## FACTS COMMON TO ALL COUNTS

### *Momentum's Business Operations and Growth*

11. Momentum is an owner-operated company that provides a wide range of services to its customers from solar enrollment through customized design, engineering, permitting, installation and activation of solar energy systems.

3

12. The business of selling solar energy systems is highly competitive and success is driven by the development of effective marketing strategies, cultivation of customer relationships, consummation of sales, recruitment of competent and driven employees, and the effective training of such employees.

13. Consequently, Momentum has invested significant resources and human capital to craft effective marketing strategies and training materials and programs to develop extensive customer and vendor data, all of which have been critical to Momentum's success in the industry.

14. Through its efforts, Momentum has obtained substantial market knowledge of every aspect of the solar energy retail market, and through that knowledge it has cultivated relationships and techniques that have yielded advantages that lower its sales costs relative to its competitors.

15. Momentum's investments have paid dividends and allowed Momentum to grow exponentially since its founding in 2009. In 2011, for example, Momentum had four employees and one facility in New Jersey. Today, Momentum has 10 facilities in six states and employs over 1,000 individuals.

16. Momentum opened an office in Orlando, Florida in the Spring of 2018.

17. Momentum's Orlando office is one of its fastest growing offices and is located in one of the hottest solar markets in the country. In just over a year, Momentum has expanded from zero to well over 100 employees in Florida. Momentum has devoted significant financial and non-financial resources to expanding its share of the Florida solar market.

### *Momentum's Proprietary Employee Training and Sales Scripting*

18. Intensive employee training is a major ingredient in Momentum's success; the first week for each employee of Momentum sales department is spent in training.

19. Momentum invests significant time and money into the written materials used to train its employees.

20. In addition to classroom-type presentations that are part of Momentum's sales training, Momentum trains its employees by staging role-playing episodes in front of the training classes to demonstrate for its staff how to answer customer questions and handle difficult or reluctant sales prospects.

21. During the training and once new employees are integrated into the sales force, they are provided with sales "scripts" that, like the training manual and the employee orientation in general, are based upon Momentum's specialized knowledge of the market conditions and research.

22. The sales scripts are also specialized for each stage of the sales cycle. For example, Momentum drafts specific scripts for: (1) initial calls; (2) follow-up calls; (3) sales qualification calls; and (4) calls placed after a home visit that did not result in a signed contract.

23. Again, those scripts are specifically tailored based upon market experience and feedback from the staff as to what types of communications are effective.

24. In addition to the aforementioned training, Momentum provides its employees that are charged with canvassing in the field training at strategically tailored areas in the market. These locations are proprietary to Momentum and are identified using sophisticated modeling and algorithms that have been designed by Momentum.

25. In order to protect its legitimate business interests, Momentum requires its employees, including the Breaching Employees as defined below, to sign an employment agreement containing certain restrictive covenants.

26. Momentum's employment agreement precludes an employee from: (A) for a period of six months following conclusion of employment from Momentum, competing directly or indirectly with Momentum; (B) ever disclosing Momentum's confidential business information; and (C) for a period of one year following conclusion of employment from Momentum, approaching Momentum's customers, suppliers, or employees. The relevant Momentum Employment Agreements are attached hereto as Composite **Exhibit A**.

27. Donald Castillo ("Mr. Castillo") began working for Momentum as a Canvasser.[1]

28. Subsequently thereafter, Mr. Castillo rose the ranks within Momentum to Team Leader and ultimately to Manager.

29. As a Team Leader, Mr. Castillo led five to six Canvassers in the field often providing real-time and immediate training to Canvassers which included an emphasis on Momentum's proprietary business practices. As a Manager, Mr. Castillo led approximately 25 people during daily training meetings, which also emphasized Momentum's proprietary business practices.

30. Mr. Castillo worked as a Manager for approximately six months before he left Momentum for Blue Raven.

31. During his tenure, Momentum held Mr. Castillo in high regard and treated him as a key employee providing him with access to a wealth of Momentum's proprietary information maintained in Momentum's encrypted network.

---

[1] Canvassers at Momentum, after executing an employment agreement, receive the aforementioned training and are provided proprietary information of specific locations in which Momentum has identified a need for solar. A group of canvassers are trained and supervised by Team Leaders who manage a number of locations and the Team Leaders are supervised by Managers.

***Defendant's Knowledge of Employment Agreements and
Efforts to Poach Momentum Employees and Steal Trade Secrets***

32. In April of 2019, Mr. Castillo advised that he needed some time off to get his affairs in order and visit his family before an upcoming military deployment.

33. Mr. Castillo took this time off. However, as it turns out, Mr. Castillo was not preparing for deployment.

34. Instead, Mr. Castillo abruptly left Momentum to take a position with Defendant.

35. This was in violation of Mr. Castillo's employment agreement because he obtained employment with Defendant within six months of the conclusion of his employment from Momentum.

36. The employment agreement also precludes Mr. Castillo from: (A) ever disclosing Momentum's confidential business information; and (B) for a period of one year following his termination of employment from Momentum, approaching Momentum's customers, suppliers, or employees (the "Donald Castillo Agreement"). *See* Composite **Exhibit A**.

37. Subsequently, as an agent and employee of Defendant and with knowledge that Momentum has its employees enter into the aforementioned employment agreement, Castillo embarked on a campaign to recruit Momentum employees possessing intimate knowledge regarding Momentum's proprietary training and marketing strategies.

38. By the middle of April, Defendant convinced Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes, to leave their employment with Momentum and take a position with Defendant.

39. Similar to Mr. Castillo, Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla

7

Mercedes had access to and learned Momentum's proprietary and confidential business information, including research and marketing strategies geared towards expanding Momentum's share of the burgeoning Florida solar energy market.  As Team Leaders and Canvassers, they also received extensive training and had access to Momentum's sales leads, Florida solar market intel, sales scripts for the Florida market, interview techniques, bespoke interview questions, team leader platforms, compensation structures and sales leads.  This information was stored electronically on Momentum's computer system and they had access to such system.

40. Like Mr. Castillo, Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes were required to execute an employment agreement identical to that which was executed by Mr. Castillo (collectively referred to as the "Breaching Employees"). *See* Composite **Exhibit A.**

41. The Employment Agreements precluded the Breaching Employees from: (A) for a period of six months following their termination of employment from Momentum, competing directly or indirectly with Momentum; (B) ever disclosing Momentum's confidential business information; and (C) for a period of one year following their termination of employment from Momentum, approaching Momentum's customers, suppliers, or employees. *Id.*

42. In violation of the foregoing covenants, the Breaching Employees obtained employment with Defendant within six months of his termination from Momentum and took Momentum's confidential, proprietary information with them when they joined Defendant. Moreover, upon information and belief, since obtaining employment with Defendant, the Breaching Employees have also attempted to lure additional Momentum employees to Defendant.

### *Defendant's refusal to cease their illicit conduct*

43.  On April 17, 2019, Momentum sent Defendant a letter which advised Defendant that it had hired several former Momentum employees who (a) are subject to written employment agreements containing non-compete, non-solicitation and confidentiality restrictive covenants; (b) are in possession of confidential and proprietary information belonging to Momentum; (c) are soliciting other Momentum employees; (d) are precluded from conveying, publishing or otherwise making available to any third party Momentum's confidential information.

44.  In this correspondence, Momentum afforded Defendant an opportunity to (a) identify all former Momentum employees currently employed by Defendant; (b) immediately terminate the employment of the Breaching Employees; (c) identify all trade secrets, confidential information and proprietary information belonging to Momentum and disclosed to Defendant by Momentum's employees; and (d) immediately sequester, protect from disclosure or dissemination and cease any use of Momentum's Confidential Information.[2] The April 17, 2019 letter to Defendant is attached hereto as **Exhibit B**.

---

[2] The various Momentum Employment Agreements defined "Confidential Information" as "any secret or proprietary information or knowledge which is not generally available to the public and which relates directly or indirectly to the business or businesses of the Company or any of its Business Partners. This includes, without limitation, any information or knowledge pertaining to the Company's methods, processes, formulae, compositions, systems, techniques, inventions, machines, computer programs, research projects, technological data, processes, designs, technology, know-how, business plans, developments or improvements with respect to technology, software, copyrights, merchandising, advertising, distribution or sales methods, sales or profit figures, present or future research and development or investigations, trade secrets, techniques, strategies and information concerning employees, customers or vendors of the Company; customer lists, prospective customer lists, vendor lists, pricing strategies and other data; sales training, methods and techniques, pending, current or previous projects and proposals, sources of supply, financial data and information, marketing, production, or merchandising systems or plans, inventory records, sales figures, office procedures, delivery schedules, business contacts, the nature and structure of business relationships, and policies and procedures; or any other specialized information or proprietary matters of the Company or its Business Partners and trade secrets pursuant to the Uniform Trade Secrets Act. Confidential Information includes

45. In an effort to resolve this matter prior to the commencement of litigation, Momentum offered to meet and confer with management from Defendant. *Id*.

46. Defendant declined to appear for the proposed meeting and has not met any of the demands set forth in Momentum's April 17, 2019 correspondence.

## COUNT I
**(Tortious Interference with the Employment Agreements of Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes)**

47. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

48. Momentum established a contractual and advantageous business relationship with the remainder of the Breaching Employees as evidenced by the relevant Employment Agreements attached hereto as Composite **Exhibit A**.

49. Defendant, through its employment of Mr. Castillo, knows of Momentum's contractual and advantageous business relationship with Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes, and, in particular, the terms of relevant Employment Agreements.

50. Despite knowledge of Momentum's contractual and advantageous business relationship with Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes, Defendant intentionally, tortuously, and unjustifiably, interfered in Momentum's contractual and advantageous business

---

information or knowledge that is or was conveyed or stored either orally, in writing, in graphic or pictorial form, or electronically (including hard drives, PDAs, computer chips, disks, magnetic tape, cd rom, etc.), or in any other format or media." *See* Composite **Exhibit A** at ¶ 5 (A)(1).

10

relationship with these employees by inducing, conspiring with, and encouraging them to breach their contractual obligations to Momentum.

51. Defendant's interference with Momentum's contractual and advantage business relations was intentional and unjustified.

52. As a direct and proximate result of Defendant's intentional and unjustified interference in Momentum's contractual and advantageous business relationship with Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes, Momentum has suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its customer relations, employee relations, business reputation and goodwill and for some of which injuries there is no adequate remedy at law.

53. Further, because the foregoing wrongful act of Defendant has caused Momentum to incur litigation expenses in enforcing its Employment Agreements with Tyler Castillo, Keishla Rosado, Sebastian Caicedo, Michael Waldt, Felipe Caro, Christian Fernandez, Daniel Lopez, Soriah Sidaui and Karla Mercedes, Momentum is entitled to recover those litigation expenses, as damages, from Defendant.

54. Momentum has suffered damages and its economic interests have suffered as a result of the Defendant's tortious interference with Momentum's contractual relations.

## COUNT II
**(To Enjoin Defendant from Aiding and Abetting Breach of Employment Agreements)**

55. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

56. Momentum entered into Employment Agreements with the Breaching Employees.

57. The Employment Agreements precluded the Breaching Employees from: (A) for a period of six months following their termination of employment from Momentum, competing directly or indirectly with Momentum; (B) ever disclosing Momentum's confidential business information; and (C) for a period of one year following their termination of employment from Momentum, approaching Momentum's customers, suppliers, or employees. Defendant actively solicited employees of Momentum.

58. Defendant currently employs the Breaching Employees thereby aiding and abetting the wrongful actions of the Breaching Employees in violation of their Employment Agreements with Momentum.

## COUNT III
**(Defendant's Aiding and Abetting a Breach of Fiduciary Duty)**

59. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

60. A claim for aiding and abetting a breach of fiduciary duty arises when (1) there is a fiduciary duty owed by the primary wrongdoer, (2) breach of that duty, (3) knowledge of the breach by the alleged aider and abetter, and (4) substantial assistance or encouragement by the aider and abetter in the wrongdoing.

61. Momentum reposed trust and confidence in its employees and the employees expressly accepted this reposition of trust and confidence and as a result the Breaching Employees owed fiduciary duties to Momentum.

62. The Breaching Employees breached their fiduciary duties to Momentum by actively soliciting employees of Momentum to go and work for Defendant.

63. Defendant knew about the aforementioned breaches and substantially assisted the Breaching Employees' breach of fiduciary duties owed to Momentum.

## COUNT IV
**(Civil Conspiracy)**

64. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

65. Defendant and the Breaching Employees have conspired and agreed to have the Breaching Employees breach their restrictive covenants and fiduciary duties owed Momentum.

66. Defendant furthered the conspiracy with the Breaching Employees by willingly and voluntarily providing them employment, using Momentum's proprietary and confidential information and allowing them to compete with Momentum in Orlando in violation of their Employment Agreements. Moreover, upon information and belief, Defendant has sold solar products and services to customers who were identified by the Breaching Employees during their tenure at Momentum.

67. As a direct and proximate result of Defendant's wrongful conduct Momentum has suffered damages.

## COUNT V
**(Tortious Interference with Business)**

68. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

69. The Defendant knowingly, intentionally, and without justification, interfered with the Momentum's business relationships with its clients, customers, vendors, employees, and lead sources.

70. The Defendant interfered with Momentum's prospective economic advantage by taking, soliciting and accepting confidential and proprietary information of Momentum, and Blue Raven hired the former employees of Plaintiff in furtherance thereof.

71. As a direct and proximate result of Defendant's improper interference, Momentum has suffered and will continue to suffer damages.

## COUNT VI
### *(Unjust Enrichment)*

72. Momentum repeats and realleges the allegations 1 through 46 of the Complaint as if fully set forth herein.

73. Defendant received financial benefits and ill-gotten gains by virtue of their misappropriation and misuse of Momentum's confidential business proprietary information and trade secrets.

74. The retention by Defendant of those benefits, advantages and profits belonging to Momentum is unjust.

75. As a direct and proximate result of Defendant conduct, Momentum has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Momentum demands judgment against the Defendant, or in the alternative, as follows:

a. Enter an injunction enjoining and restraining Defendant from soliciting current or former Momentum employees for employment and/or confidential, proprietary information in violation of those employees' Employment Agreements with Momentum;

b. Permanently restraining the Defendant, their agents, servants and employees and all others acting in concert or participating with them, from soliciting business from or doing business with, directly or indirectly, any past, present or prospective customer of Momentum;

c. Permanently restraining the Defendant from publishing, releasing, disclosing or utilizing any trade secrets or confidential, private or propriety information belonging to Momentum;

d. Compelling the Defendant to return to Momentum all originals and all copies, electronic or otherwise, of all of Momentum's confidential, proprietary, or trade secret information in their possession, custody or control, or in the possession, custody or control of their agents or representatives;

e. Compelling the Defendant to certify in writing, under the penalties of perjury, after returning the information described above to Momentum, that all paper copies and all copies maintained in electronic format or on any electronic device, of any of Momentum's confidential, proprietary or trade secret information in their possession, custody or control have been returned to Momentum, and that all electronic copies of any such information have been permanently deleted and/or destroyed from their respective e-mail accounts or any other location where they have been or are currently stored;

f. Permitting Momentum to have access to and examine (at the Defendant's expense) any and all computers, flash drives, printers, cell phones and other devices capable of storing or transmitting electronic data in the Defendant's possession, custody or control, to confirm that the Defendant no longer possesses any of Momentum's confidential, proprietary or trade secret information;

g. Permanently restraining Breaching Employees for a period of at least one year, from taking or accepting employment with or otherwise rendering any services to Defendant;

h.  Permanently restraining Defendant from utilizing in the future the methods or information detailed in this Complaint and from utilizing any of the information obtained in violation of the employees' Employment Agreements attached hereto as Composite **Exhibit A**;

i.  Award compensatory damages and interest to Momentum in an amount to be proven at trial;

j.  Award Momentum its costs, including reasonable attorneys' fees, incurred by Momentum in enforcing the Employment Agreements attached hereto as Composite **Exhibit A**.

k.  Entering judgment against the Defendant for compensatory damages in the amount of profits from business opportunities stolen by Defendant, together with interest, investigative expenses, penalties, attorneys' fees and punitive damages pursuant to and collection costs;

l.  Entering judgment against the Defendant for each cause of action set forth herein;

m.  Requiring an accounting and disgorgement by the Defendant of any income generated by their illicit actions; and

n.  Such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## **VERIFICATION**

I, Ken Dileo am the Director of Door to Door Canvassing at Pro Custom Solar, LLC d/b/a Momentum Solar, the plaintiff herein. The allegations contained within the Verified Complaint are true to the best of my knowledge, information and belief.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Ken Dileo

Dated: July 16, 2019

July 16, 2019                                   Respectfully submitted,

                                                                          MARK MIGDAL & HAYDEN
                                                                          80 S.W. 8th Street, Suite 1999
                                                                          Miami, Florida 33130
                                                                          Telephone: (305) 374-0440

                                                                          By: *s/ Josh Migdal*
                                                                               Josh Migdal
                                                                               Florida Bar No. 19136
                                                                               josh@markmigdal.com
                                                                               Yaniv Adar, Esq.
                                                                               Florida Bar No. 63804
                                                                               yaniv@markmigdal.com
                                                                               eservice@markmigdal.com